It's a pleasure to be here for the first time, and I'd like to extend a special welcome to Judge Mills from my home state of Illinois. Well, thank you. Anyway, my name is Dan Apologia. I'm going to please the Court. I represent the Entertainment Industry Development Corporation, which is now known as Film LA, but I'll refer to it as EIDC for the sake of consistency, as I have in brief. Your Honor has sent us an order requesting that we address two specific issues, so I think it makes sense to start with those issues. The first is the diversity of citizenship allegations. I'm not sure specifically what the Court has in mind there, but suffice it to say, I think, that I noticed in our opening jurisdiction allegation it says 50,000. I think that's a typo. Here's the problem, counsel. Go ahead. Under the diversity statute, under 28 U.S.C. Section 1332, for a corporation, there are two ways of determining they have at least two places of citizenship. I'm sorry, at least one, but we have two different tests. One is any state in which the corporation is incorporated, and the other is wherever its principal place of business is. The complaint alleges where the principal place of business of USLIC, which is Pennsylvania. It does not tell us in which states USLIC is incorporated. If the insurance company is incorporated in California, you are not diverse, and we don't have jurisdiction. Certainly. Well, I thought it said a Pennsylvania corporation, but if it doesn't, then that's an incorrect. Well, a Pennsylvania corporation is a very, very loose term and may refer to its principal place of business. We have many corporations that have no operations other than a drop box in Delaware, but they are Delaware corporations, even if they have a principal place of business someplace else. I understood. Well, I guess suffice it to say that certainly that could be more specifically alleged. Just tell us. But it is a Pennsylvania corporation. Yes, but it doesn't answer the question. Is USLIC incorporated in California? No. Okay. We're confident of that. A hundred percent. Where is it incorporated? It's Pennsylvania. It is incorporated in Pennsylvania? Yes, it is. That's my understanding. That's your understanding. Well, that is as far as I know what the records show. So I've never seen anything to the contrary. In other words, if they move their state of incorporation to somewhere else, I don't know. They can be incorporated in multiple states. I actually went to the website and couldn't answer the question definitively. Yes. I've never seen any record that indicated it was incorporated anywhere other than Pennsylvania. That's the only place I've ever seen any indication of incorporation. And what have you looked at to determine that? Well, state records of Pennsylvania. You've actually seen articles of incorporation that were stamped and sealed by the Secretary of State or whoever does that in Pennsylvania? It's been a couple years, but that's my normal process. I'd have to look through my records and see for certain. The reason it's only a problem here, counsel, is that a complete statement of jurisdiction in your complaint would have told us both the principal place of business and where it was incorporated. And then it would have been incumbent on USLIC to come forward and admit or deny that. And if they were incorporated someplace else, namely California, then that is something that they would have an obligation to disclose. So we're concerned with marching in straight lines here. Sure. Well, I guess it's never been raised by them, even by a letter, at any point. But jurisdiction is the first thing we have to look at. If we don't have jurisdiction, we don't have jurisdiction. Granted. So we need to know there. We may follow up with something to have you provide something in writing. But can you represent to the court with the idea that we will rely thereon that this entity is incorporated in Pennsylvania and that it is not incorporated in California? I think I can make that representation. You think you can? I can make that representation, Your Honor, yes. Okay. So you are making a representation to the Ninth Circuit Court of Appeals that the entity is incorporated in Pennsylvania. It may also be incorporated elsewhere, but not in California. Okay. Not in California. As long as it's not in California. Right. And you can furnish the court with a certified copy of the documentation you need. I will do that expeditiously, Your Honor, to satisfy the court of your documentary requirements for that. A 28-J letter I've heard reference to, so I'll certainly submit it in the hospice if that's suitable to the court. So if that's the only issue on diversity, I will move on to the other issue, which is the Silverbrand case. And I'm glad the Court raised this because I think it helps focus the issue on what this case is not about. This case is not, for the most part, for 90 percent, is not about the search warrant procedure at all. The search warrant procedure is merely a tool in an overall investigation of a pre-charge criminal investigation of two individuals, and it is well that investigation went into the interviews of EIDC board members and employees, other than those people who were ultimately charged in the case. The investigation lasted for nearly two years before any charge was filed. And that investigation only yielded charges against two employees, but not against the bulk of the members of EIDC who were insured under the policy, on one hand, and also who were interviewed extensively and who required representation during the whole course of that investigation, for which 90 percent of the fees, if not more, were incurred. The search warrant procedure, I don't even know if there were a thousand dollars in fees incurred, if even there was an opportunity to show up to any proceeding to make any argument or defense. Let's skip over that issue for a minute and get to the, what at least I think is really the underlying issue here. At the end of the day, whether there was a duty to defend or not, I have to go back afterwards, was there any possibility under this policy that the insurance company would have to indemnify for the underlying charges? Indemnify. In other words, in this case, it was a possible criminal action. Right. If the action had gone forward, and indeed it did, if it had gone forward and there were fines or criminal liability, would the insurance company be liable for any of those? No. It's not, but this policy is divided into two aspects. Right. But if it could not be liable for that, how could it then be liable for the duty to defend? Because there's a separate duty to defend provision in the policy. Even if there would be no possibility that the insurance policy would ultimately be liable for paying, if you will, the ultimate thing for which it was defending. Correct. The duty to defend provision in the policy specifically allows for non-injunctive or non-punitive relief, non-monetary relief is the word I was looking for. But that's all civil relief. Was there any civil relief that the county might have sought here? Any civil relief that the county? Well, in theory, they could have brought, you know, any type, you know, certain types of claims. Given what the county had told you at the time they filed the statement of probable cause, it's certainly true that they were investigating EID on criminal charges. Was there any possibility that they were also going to seek some kind of civil restitution? Certainly conceivable. Would the insurance company have been on the hook for any civil restitution? Not for, I don't think for any restitution. You know, if there were any types of non-monetary relief that would have been afforded, then, I mean, you know, I'd have to look at the exact case because I don't know what theory that they might bring it under. If it was under Business and Professions Code Section 17200, then I think the answer to your question is no. But that they wouldn't be responsible for providing that restitution. You know, I think that's that narrow issue. If the county decided to proceed on sort of two fronts, one, we're going to charge anybody who's defrauded us criminally. And second, we are going to seek civil restitution or bring a forfeiture action or something like that. And the county had requested some kind of an injunction for whatever reason. All of a sudden, does the insurance company now have a duty to defend? I think under that scenario, you're right. Yes, it does. And the injunctive, at least as to the injunctive action, now, presumably those can be parsed out. Is there any reasonable chance that the county would be seeking an injunction here? Under the facts of this case? Well, given the statement of probable cause and given what we knew about what the county was interested in, was there any reasonable chance here that what the county was looking for was an injunction? Well, arguably. I mean, it's certainly within the realm of potential remedies. I mean, it's not, you know, that wasn't the focus, obviously, in that statement of probable cause. They were looking towards criminal allegations for the most part, I think. But certainly within the realm of reason that they could be seeking injunctive relief to, say, preclude certain charitable donations, which was one of the issues in the substantive allegations, that it was making improper charitable donations with the monies of the state, in effect. And that's where part of the bad allocation was spent. But that isn't the way an insurance claim works, is it? You have to indicate you're making a claim. I'll follow up with that. But you have to tell you you're going to make a claim, take it to the insurance company. And the insurance company looks to determine what the claim is, whether it's covered by the policy, whether it's excluded by the policy. And if it determines that there is, then it determines whether it has an obligation to defend. In this case, I just don't even see where the injunction issue comes in. And if you look at the Scottsdale Insurance Company case, it seems to me that where there's not even a potential duty to indemnify, you've got a hard case to say that the insurance company has an obligation to defend. What's your thought on the Scottsdale case? Do you have any? I'm familiar with the case. Actually, I have a copy of it in my file. But there is a critical issue, I think, that distinguishes our policy from those cases like Scottsdale, which is an indemnity policy, strictly an indemnity policy. It doesn't even have a separate duty to defend provision. So when you look at our policy versus these other policies, I mean, there's a long history of cases, I'll grant you, that say if you don't have an indemnity obligation, then there's no duty to defend obligation. But that's because the duty to defend is implied from the duty to indemnify. It's inferred, implied, however you want to look at it. But this policy is special. It has a separate duty to defend provision that is broader and co-existent and actually co-existent with the duty to indemnify provision. So and they're defined, I mean, the wording of the two provisions make them very clearly distinct. One talks about coverage and coverage of this insurance, and the other one talks about to which this insurance applies generally. And then you have the exclusion F, which indicates that duty to defend goes broader. But that suggests that if something were clearly excluded from the policy, let's say that the insurance policy said that we expressly declined to cover accidents that occur on Grand Avenue in front of the Ninth Circuit, and you bring a claim and you say we had an accident in front of the Ninth Circuit on Grand Avenue, and we realize that you don't have to indemnify us, but we'd like you to defend this in the accident that's been brought against us. That's, in effect, what you're saying, isn't it? Not exactly. What I'm saying is that if you had a separate provision in your policy that says even if we don't have to indemnify you, we still have to defend you, then, yes, you do have to defend me. How does that make any sense, counsel? Insurance is designed to indemnify people for certain things that may occur. And the insurance company bets it won't happen, and you bet that it will, and you pay a premium and everybody makes an actuarial calculation as to whether that's a good thing to do. Something is either covered or it's not covered. Lots of times there's litigation and disputes about whether something is, in fact, covered. But it seems to me you're asserting a rather novel theory that there is a duty to defend because it's separately set out in the insurance policy even if there is no potential obligation to indemnify. Is there any case you can cite the court to where that has been found to be the case? Well, if I can answer the first question. If I can answer that in two parts, if you don't mind, because it's sort of two questions. Okay. But the first question is whether or not there is a duty to defend that can be independent from the duty to indemnify. And indemnification by its very definition means paying money for something that someone has to pay for. Right. That the insured would otherwise have to pay for. And in the case of non-monetary relief that's sought, whether it be in a criminal action for criminal penalty of punishment in jail or what have you, or whether it be for injunctive relief, those are non-monetary relief for which there can't be any indemnification because there is no money to be paid by the insured. So this policy provides for that scenario, and that's why there's a separate duty to defend provision, which is, in fact, broader and specifically provides for that contingency. Okay. Where's the case law that says that you're right? Thank you. With respect to that, if we look to the Bodell case, which is from this circuit, the analysis in that case found there was a distinction to be had between that which was covered under an indemnity policy and that which was covered under the separate duty to defend. And that analysis in that case is directly on point to this, this exact issue that I just discussed. They distinguish between a criminal procedure and a criminal investigation and found that the criminal investigation is not a criminal proceeding, and therefore there should be coverage under that scenario. And also they found that the legislative intent under 533.5 was to codify insurance code 533.5 was to codify existing law, which never considered criminal investigations as falling within the coverage preclusion of the common law. So existing at that time, and that's consistent to this date. There still hasn't been a case found otherwise. So in the Bodell case, they found a separate duty to defend that extended beyond the duty to indemnify. And there was also, admittedly, there was also additional language about the government code, I mean, not the government code. There was additional language in that policy. Roberts. Well, bottom line here, though, aren't you just splitting hairs by arguing that a proceeding of a criminal nature is not a criminal proceeding? Well, one could say splitting hairs, but there's so many laws that split hairs that for that precise reason. Well, we don't want to add to that long list. I didn't write the law. The legislature did, and they picked those words for a reason. I think that that reason has been borne out in cases such as the People v. Superior Court, In re Laff, L-E-F-F, where they found an important distinction based on those types of – based on those exact types of words. I mean, in Laff, they found that criminal action in one context in the evidence code is – should be more broadly interpreted, but not so broadly interpreted under the codice of procedure. In the In re Scott case, there was a finding there that the habeas corpus was a civil proceeding and not a criminal proceeding, even though it fell within this special proceedings of a criminal nature, Title 12. They also found in People v. Fields that the competency to stand trial under penal code section PC-1368 was not a criminal proceeding. Even though it's under the penal code. Kennedy, what was the claim? What claim did your clients make under the policy in this case? Well, the claim is that there is a district – a district attorney investigation of all of these individuals, including EIDC, and EIDC, of course, only functions through its individuals, all of which were individual insureds under the policy as that policy is defined. And that that investigation is the claim. Now, the trigger for that investigation, the written notice, in effect, that investigation was ongoing, was this initial warrant. What did it provide to the insurance company? The insurance company has a claim formed, does it not? Presumably. Was that filed? Well, there wasn't – I don't know if – honestly, I don't know if there was a specific form filed. There was many letters by attorneys written asserting the claim, providing the notice, the copy of the statement of probable cause. The policy doesn't require anything different. Okay. So from your – from EIDC – I'm sorry, your client's perspective, it complied with the claims procedures of the policy. Absolutely. And I might add that initially the insurance company alleged that there was no claim existing, but then ultimately conceded that there was. So it really – that has been essentially a moot issue. If you have 20 seconds left, you might want to save something for rebuttal. Well, I'll reserve a little bit just because I just want to make sure I'm addressing all of your Yeah, okay. Well, I'll reserve what I can. Thank you, Your Honors. Now it's 7. Good morning, Your Honors. May it please the Court, Brian Weiss for defendant, United States Liability Insurance Company. I would like to also extend my welcome to Justice Mills. Thank you for being here in California and getting some nice weather. Couldn't be in a better place, could we? Members of the judiciary often called upon to sacrifice. And I feel somewhat humbled standing here talking about an insurance coverage issue, given the preceding case, which had to do with God and Kafka and child abuse. So, you know, I appreciate the bench's ability to shift gears to something as dry and mundane as insurance coverage. Why don't you tell us about diversity? Diversity, I've been representing United States Liability Insurance Company for, jeez, 10 years. And to my knowledge, they've never had any incorporation papers filed in the State of California. They are incorporated in Pennsylvania. Or Delaware, perhaps, maybe one of those drop boxes. It's a Berkshire Hathaway company. So, you know, it could be in a gentleman's pocket. It could be in Charlie Munger's pocket. Correct. But I know they're not incorporated in California because we ourselves, U.S. Liability has filed their own actions, you know, in federal court under diversity. So I really don't think that's a concern. And certainly if it was, we would have challenged it at that juncture. You know, as many counsel do who appear at the lectern have, you know, a nice flow chart of an argument they want to go with. I also have that, but I'm trying to decide if I want to address some of the issues that jumped out at me during the council. Why don't you do that? I'm sure your written part would be lovely as well. But why don't you just respond to the questions that were raised, since those are the things that are obviously on our minds. Exactly. I think the thing that I kept scribbling down is this notion that the policy has some type of defense, separate and distinct defense clause in it, that wipes out any linkage to indemnity and basically says, it doesn't matter what you get sued for. That could be anything. It could be for murder, anything. We're going to defend you. And then EIDC is kind of going with that prophecy. And really the policy doesn't say that. The policy does have a separate paragraph that does spell out what the defense obligations are, which is nice. But what it says is that we will defend you with respect to any claim to which this insurance applies. That's the key phrase. You have to ask yourself, what does this insurance apply to? If that phrase wasn't in there, then the defense clause would read, we will defend you in any claim, period. And then that would give it. Against being sued. Pardon me? It would simply be an insurance policy against being sued. Correct. It would be a defense policy. But this added the phrase to which this insurance applies. Now that phrase can't be superfluous. It has to mean something. And what it means is you have to go back and say, okay, what does this policy apply to? And that brings you back to the indemnity obligations. What the insurance applies to is to claims that seek monetary damages. Was there any chance that the county was going to seek some kind of restitution? Perhaps. But that wasn't tendered to the United States liability. Would a restitution claim have been covered? No. And the reason why is because, and I don't have the site available to me because I didn't know that the court was going to go that direction, but the Bank of the West case, which is a California Supreme Court case, I think it was in the early 1990s, that held that, and that was a 17200 Business and Professionals Code case. And what that court, the court there held that there is no insurance coverage as a matter of law for orders that are based on the disgorgement of profits, the disgorgement or the restitution of ill-gotten gains. That was the famous phrase they used. So if there was a restitution order in this case, it would have been along the lines of you stole money from the State of California, from the people, you weren't entitled to it, you did it under false pretenses or criminal pretenses, give it back. Is there anything that the DA might have sought in the form of money that would have been covered under the insurance policy? It is possible. If the DA were the ones that were bringing the case, I think that in any case it would have been in the auspices of a criminal umbrella. Oftentimes our U.S. Attorney's offices have a civil side and a criminal side. Right. So hypothetically you're talking about, maybe not the District Attorney, but the Attorney General of the State of California, for example, coming after them. Perhaps, theoretically, if they were saying, okay, well, you stole money from specific people, in other words, you went to Harriet Smith's door in Glendora, knocked on her door, and asked for a contribution, and then you used that contribution to go to the cigar bar, which was talked about in the search warrant, give that money back to Mrs. Smith. That perhaps could be seen as a form of, quote, damages, because damages mean money to recompense a person that's been harmed. So if the order was give the money back to Mrs. Smith, put it back in her pocket, I could see an argument that that is, that would perhaps be damages. It would certainly require some head scratching to see how the policy would work. My problem there, of course, is that under a case called Gunderson, G-U-N-D-E-R-S-O-N, an insurance company cannot, or an insured cannot fabricate a duty to defend out of facts that just simply aren't pled. So there was nothing, and even if they might ultimately one day be pled. Is that the attorney down in Leisure World? No, Gunderson was actually a property damage case. Okay. That involves some trees, I think, being removed from a property, and there was clearly no coverage in the way in which the claim was presented, the damages that were sought, or lack of damages. It was strictly like an easement or an encroachment type of thing. But doesn't your logic in the policy trace back to the actual claim, if you will, that was made? We're not talking about hypotheticals here. We're talking about what actually occurred, and what actually occurred was that you had the district attorney following through on this search warrant and so on. They asked that you cover it. There was no request for injunctive relief. There was no request for anything that would be covered by the policy, was there? No, never. And that's what the Gunderson case says, is that if something had occurred after the claim was initially denied, and there was some kind of new claim brought or some wrinkle that came to light, then the insured has the obligation to bring that to the attention of the insurance company. And absent that, if the insurance company's initial denial was well founded, it can't be abrogated based on what might be pled sometime in the future, maybe never. And at no time did the appellant here come back to my client and say, okay, well, you denied another criminal thing, but now look, there's a civil proceeding going on. It didn't happen. And it has yet to happen. And it never did happen. It was always a criminal proceeding. It was presented as a claim to United States liability as a criminal action, criminal proceeding, a criminal investigation. Is that in the copy of the claim in the record? And if so, do you know where in the record? It's not in the record. Not in the record, okay. You know, when you file, like if you have a first-party property damage case, you know, there's been some kind of water damage to your house or something, and you submit a claim to an insurance company, those claims are much more form-oriented because it's a direct relationship between the insured and the insurance company, and there's no intervening third party. When there's a third-party claim being made, typically the claim, literally in my 20 years of doing this, consists of a letter or some type of communication from the insured, here's the complaint, or there's a claim being made against us, here's a copy of the letter that instituted the claim. And that's really all that's required. There's not a formal claim form that they have to fill out. So here, this was a letter saying here's a copy of the search warrant? Yeah, here's a copy of the statement of probable cause. Defend us. And I think my client rightfully said that's just not something that this policy covers. Now, the Silverbrand case I think lays to rest any notion that this search warrant proceeding was or was not a, quote, criminal proceeding. Clearly it was. It couldn't be anything else. The Silverbrand case I thought was somewhat moderate in its tone when it said, you know, that the result is an obvious one. It's a proceeding found under the criminal law statute, the penal code. So I don't think there's any dispute, and I think counsel would have to agree at this point, that the search warrant proceeding itself was not, was clearly a criminal proceeding and therefore comes under the statute. And understandably, they're running away from the notion that the search warrant was the claim, and they're saying, well, the claim really was everything that flowed from the search warrant, the investigations, you know, the need to supply documents and cooperating with the district attorney investigators. The investigation was something that U.S. Liability had a duty to defend against, not the actual search warrant proceeding. And that just, it just doesn't make sense to me. The statute says there's no duty to defend against any criminal action or proceeding. And what the plaintiff and the appellant is trying to do here is saying, yeah, well, that doesn't apply to investigations. That there's still a duty to defend the investigation part of it. Well, if you look at, at subsection C of the statute, the statute defines what, what it, what's meant by the duty to defend. And it's, and it lists, the duty to defend includes the obligation to investigate, to contest, to control the defense of, to defend, to compromise, to settle, to negotiate the compromise or settlement, or to indemnify for the, for the cost of any aspect of defending any claim in a criminal proceeding. Now, I can't think of any more broad and pervasive statement by a legislature that says if there is a criminal proceeding that is, is being levied against you, then there's no duty to defend any aspect of it, the investigation of it, the settlement of it. Which statute were you citing there? That was 533.5 parens C. Right. And that's the one, the grapplement of what we're talking about. So, you know, again, you have this language that says any aspect. That's the insurance code, right? Correct. Right. Sorry. Any aspect of defending any claim. So the word any has to, again, has to mean something here. The, the, the analogy would be, I guess, putting, putting it into more familiar context. If there was a code section that said there's no duty to defend against appellate, insured who is a party to an appellate proceeding. Okay? So under, under the, the appellant's reading of that statute, it would mean the insurance company would not have to pay for what we're doing here today, the quote, the proceeding, the, the argument. But it would have to do everything. It would have to defend everything else, the briefs, the research, the communications with counsel. That would have to be defended. Because that's not a quote criminal, you know, appellate proceeding. But everything else around it is. And that, that just cannot be the intent of the legislature. I ask your, your co-counsel if he could give us any case where, in this case, I suppose, California court, or for that matter anybody, any other court, found that the duty to defend is a separate and independent obligation from the duty to indemnify under the primary insurance policy. Well, I think counsel will probably lead you back to that Bodell case, because that's the, that's the only case really out there that even leans in their direction. The difference in the Bodell case, and it's very important, is that in the, in the insuring It said, if you are subjected to a claim by a government agency seeking non-pecuniary relief, we're going to defend you. So basically that, that's what happened. That's what happened. The actual nature of the policy, the specific language covered it there. Yeah, there was language that said if you, if you get, if you are subjected to a claim by a government regulating agency, we're going to defend you. And, and that language, there's nothing promotely like that in the, in the U.S. liability language. The defense clause here says we'll defend you if this insurance applies to that claim. And this insurance, by law and by the policy language, doesn't apply to the claim. Now, it's very important to remember also when we're, you know, we've kind of intermingling the concepts of the policy language and the statute. If the statute applies, if this panel finds that this was a criminal proceeding that extended to the investigations concerning that criminal proceeding, then it doesn't matter what the policy says. Because as a matter of law, under the same 533.5 statute, an insurance company cannot, by, as a matter of law, include a defense provision in its policy. So even if, even if U.S. liability's policy had said, if you get sued by the district attorney for misappropriating public funds and committing perjury, we're going to defend you, that, there would still be no duty to defend as a matter of law. So the first step in the analysis really is to determine whether or not the statute applies. And if it does, the inquiry frankly stops there. And that's what the district court correctly did. And, and again, I just don't see any way, shape, or form that we can reach the conclusion that the statute which says it does not, there is no duty to defend any aspect of any criminal proceeding, including the investigation of that proceeding, the defense, the settlement of that proceeding, the compromise of that proceeding, can somehow be held to apply to the criminal investigations that were going on in this case. In fact, counsel had mentioned the, the Laff case, L-A-F-F. And in rereading the case last night, I found an interesting citation on page 727. That would be 25 Cal. App. 4th, 727. And there it cites to this case called People v. Superior Court, Prenz Aquino, 1988, 201 Cal. App. 3rd, 1346. Can you give me that slide again? Yeah, sure. So, 201 Cal. App. 3rd, 1346. And the name of the case again is People v. Superior Court, and in Prenz Aquino, A-Q-U-I-N-O. The court there held that investigation and gathering of evidence is inseparable from the district attorney's prosecutorial function. So, in other words, the investigation is part and parcel of a criminal proceeding brought by the district attorney. So I think that the notion of saying, okay, well, there's certainly no duty to defend the criminal proceeding per se, but there is a duty to defend the investigations surrounding that proceeding, is the ultimate, to me, in splitting hairs. The statute says, you know, what it says. The legislative history of the statute is also very interesting. I went through that, you know, 20 times, upside down, sideways, frontwards, or backwards, and there is not one shred of any indication in the legislative history that says, although we are putting this law in the books that says there's no duty to defend against criminal proceedings, we're maintaining a duty to defend for the investigations arising out of that proceeding. It's not in there. In fact, the entire legislative history is focused on this concept that insurance companies should not be called upon to foot the bill for wrongdoers,  because what that does is that shifts the financial responsibility away from the wrongdoer and to the insurance company. So you have a situation where an insurer can say, well, I can do what I want. I'm not going to have to pay the piper for it. The insurance company will. And that's the whole block of legislative history that's in the appendix says that. And so a contrary result in this case would be contrary to the legislative history. In fact, the page number, the pages of the exhibits of the appendix were not separately numbered, so it's hard for me to point to an exact page. But on Exhibit 1, page 28, there's something called an enrolled bill report. And the quote there, it says, nor is there any valid purpose served by forcing insurance companies to defend such cases. And they're talking about criminal cases. In Exhibit 2, page 19, there's a statement that says, this bill would clarify that the prohibition regarding insurance for wrongful conduct and an insurer's duty to defend such conduct applies to criminal conduct. That was the phrase, criminal conduct, not just criminal proceedings, in the narrow sense of that day when you have to go to court to argue the search warrant. It's the whole umbrella. Unless the judges have any more questions, I'll submit. Thank you. Thank you. I'll give you a minute to clarify anything that needs to be clarified. Thanks. There are a few issues, and I'll try to be as brief, and I appreciate your indulgence.  The definition of claim in the policy under Section 3B defines claim as any written notice, which would be the statement of probable cause that we submitted with a letter from counsel, received by any insured that any person or entity intends to hold such an insured responsible for a wrongful act, intends to hold. That's a very broad, by any stretch of the imagination, notion. And certainly the statement of probable cause falls within that notion of someone intending to hold someone responsible for a wrongful act. So that's the first point. The second point is there's separate provision in the policy that he mentioned this government agency language in the Bodell case. But if you look at the Bodell case, it goes beyond just looking at that provision of the policy, and it talks about the whole intent behind 533.5. And if you look at that deeper analysis, which we've covered extensively in our brief, you'll see that there's clearly more to the Bodell case than just that distinction in the policy language. Moreover, there is analogous language in this policy. The analogous language is not only the distinction in the different language that's used between the Section A and Section B of the coverage provisions, but also Exclusion F, which specifically states in Exclusion F that the government agency language is not only the language that's used between the Section A and Section B of the coverage provisions, but also Exclusion F, which specifically states in Exclusion F that the government agency language is not only the language that's used between the Section A and Section B of the coverage provisions, but also Exclusion F. He mentioned the Aquino case and talked about the duties of the duty of a district attorney. Clearly, district attorneys do two things. They investigate crimes and then they prosecute crimes. Those are two different functions and necessarily interrelated, but they also can be distinguished quite clearly based on when they file the charge. It's as simple as that. Legislative history is the last issue that he discussed, and he said very pointedly that the legislative history talks about people who are accused of committing a crime. Well, we're not stating that anyone was ever accused of committing a crime here. It was simply a notice to the insured that someone intended to hold someone responsible for a wrongful act. There was never a charge filed. The legislative history of 533.5 only discusses accusations, charges having been filed against an insured. And there is never any discussion. The word investigation doesn't even come up in the legislative history. Moreover, it doesn't come up in any of the cases that precede 533.5. So necessarily, you cannot imply or infer from that that the legislature intended to include an investigation within the notion of criminal proceeding. All they had to do was add the word investigation if that's what their intention was. Certainly, they are capable of adding that word if that's what their intention  Thank you. Thank you very much. We thank counsel for the argument. And with that, the court not only is in recess, but stands adjourned. Did you submit games? Enough that we had two cases that were submitted on the briefs. Okay, great. All rise. Court is in session. Stand adjourned.
judges: Bybee, Smith, Mills